# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TAYLOR BROWN, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNKNOWN NORMAL POLICE OFFICERS, | ) ) |
| | ) |
|     Defendants. | )    JURY DEMANDED |

## CIVIL COMPLAINT

NOW COMES Plaintiff, TAYLOR BROWN, by and through her attorneys, Bakos & Maisuria Law Group, complaining against Defendants Unknown Normal Police Officers individually, as follows:

## INTRODUCTION

1. This action, arising out of the February 9, 2023 seizure of Taylor Brown and is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Ms. Brown's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## THE PARTIES

3. The Plaintiff, Taylor Brown, resides in the state of Illinois.

4. Unknown Defendant Normal Police Officers were at all relevant times duly appointed police officers of the Town of Normal acting within the scope of their employment and

under color of law. They are being sued in their individual capacities.

**FACTS**

5. On or about February 8, 2023, Plaintiff Taylor Brown was a resident of Normal and attending college in the area.

6. Late that evening, a fire erupted in her apartment.

7. Ms. Brown's roommate called 9-1-1 to report the fire immediately.

8. Upon arrival, the police officers who responded to the call with the fire officials asked Ms. Brown to wait in a squad car that was parked in front of her residence until the officers were ready to speak to her.

9. Ms. Brown followed that direction.

10. Shortly thereafter, an Unknown Normal Police Officer asked Ms. Brown if she would be willing to go to the Normal Police Station to answer questions about the fire.

11. After being assured that she would not be questioned for a long period of time in light of how late it was, Ms. Brown agreed to be questioned and was transported to the station by an unknown female Normal Police Officer.

12. There was no probable cause to arrest Ms. Brown for any crimes at any time before she was transported to the Normal Police Station or at any time during the transport.

13. Ms. Brown arrived at the station with the transporting officer in the early morning hours of February 9, 2023.

14. Ms. Brown was left in a room for approximately 40 minutes after she arrived at the station and was not questioned by any Normal Police Officers during that time.

15. Tired, Ms. Brown exited the room and told the transporting officer that she wanted to be taken back to her vehicle at that time.

16. The transporting officer told Ms. Brown that she would take her back shortly and instructed Ms. Brown to wait for the transporting officer in the lobby.

17. Ms. Brown went to the lobby and waited as directed.

18. Shortly thereafter, the female transporting officer approached Ms. Brown and requested her cell phone.

19. When Ms. Brown asked the officer why she was requesting Ms. Brown's cell phone, the officer told Ms. Brown that it was being seized as evidence related to the housefire.

20. There was no probable cause to seize Ms. Brown's cell phone at that time.

21. There was no warrant permitting officers to seize Ms. Brown's cell phone at that time.

22. Ms. Brown was not required under the law to relinquish her cell phone to any police officer at that time.

23. Ms. Brown then FaceTimed her mother, a Chicago Police Officer.

24. During the FaceTime call, Ms. Brown told her mother that she went to the station voluntarily and that the officer told Ms. Brown she would take her home but was not doing so.

25. Several officers began to surround Ms. Brown as she was on FaceTime with her mother.

26. Ms. Brown also informed her mother that the officers were surrounding her and that she was scared.

27. The officers proceeded to grab Ms. Brown's wrists, and one officer applied pressure to the back of Ms. Brown's ear while another Officer pulled her to the ground.

28. One officer placed his/her knee in Ms. Brown's back.

29. At the moment that the first officer made physical contact with Ms. Brown's person during this encounter, there was no probable cause to arrest Ms. Brown for any crimes.

30. At the moment that the first officer made physical contact with Ms. Brown's person during this encounter, there was no reasonable suspicion based on articulable facts to seize Ms. Brown for any reason.

31. During this encounter, the phone fell from Ms. Brown's hand causing the FaceTime call to disconnect.

32. Ms. Brown was handcuffed and arrested.

33. There was no probable cause to arrest Ms. Brown for any crimes at the time she was arrested.

34. Ms. Brown did not batter any police officer during the course of her arrest.

35. Ms. Brown did not assault any police officer during the course of her arrest.

36. Ms. Brown did not resist arrest at any time during the course of her arrest.

37. Ms. Brown was not charged with battering a police officer.

38. Ms. Brown was not charged with assaulting any police officer.

39. Ms. Brown was not charged with resisting arrest.

40. Ms. Brown was not charged with any crimes whatsoever as a result of her arrest or the preceding house fire.

41. Defendant(s) have/had no probable cause to arrest Ms. Brown for any crimes related to the housefire.

42. Defendants seized Ms. Brown's phone upon her arrest.

43. Defendant(s) attempted to obtain a search warrant to search Ms. Brown's cell phone, but the warrant was not approved by the State's Attorney.

44. Defendants did not have probable cause to search Ms. Brown's phone or to seize the phone at any time.

45. Despite that, Ms. Brown was not given her cell phone back from the officers until 3:30PM on February 9, 2023- approximately two hours after she was released from the custody of the McLean County Jail.

46. Ms. Brown was transported to the McLean County Jail from the Normal Police Station following her arrest.

47. While at the jail, Ms. Brown was subjected to an intrusive search where she was required to remove her clothing while a jail employee inspected her genitals for contraband.

48. Ms. Brown was released from the jail at approximately 1:00PM on February 9, 2023.

49. Ms. Brown was released from the county jail with no bond and no charges brought against her for any crimes.

50. As a result of the foregoing, Ms. Brown suffered physical pain, including bruising, sore muscles and lacerations to her wrists, and emotional trauma including but not limited to humiliation and severe emotional distress.

## **COUNT I: 1983 FOURTH AMENDMENT –FALSE ARREST**
(Against Unknown Defendant Officers)

51. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

52. At all times relevant herein, Taylor Brown was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

53. Unknown Defendant Officers, acting under the color of law, caused Ms. Brown to be seized at the Normal Police Station.

54. Unknown Defendant Officers did not have probable cause to believe that Ms. Brown had committed a crime either at the time that she was initially placed under arrest or any time thereafter.

55. Unknown Defendant Officers did not have reasonable suspicion to believe that Ms. Brown had or was about to commit a crime when they seized Ms. Brown.

56. Unknown Defendant Officers had no lawful justification for seizing Ms. Brown.

57. Such actions constitute deliberate indifference to Ms. Brown's rights under the United States Constitution in violation of the Fourth and Fourteenth Amendments.

58. Unknown Defendant Officers' conduct in unlawfully seizing Ms. Brown was undertaken with malice, willfulness, and reckless indifference to Ms. Brown's rights.

59. As a direct and proximate result of the wrongful actions of the Unknown Defendant Officers, Ms. Brown suffered loss of liberty and severe emotional distress.

**WHEREFORE**, the Plaintiff prays for judgment against Unknown Defendant Officers for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT II: 1983 FOURTH AMENDMENT - EXCESSIVE FORCE
(Against All Unknown Individual Defendant Officers)

60. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

61. At all times relevant herein the Plaintiff, Taylor Brown, was vested with, possessed and was guaranteed by the Fourth Amendment to the United States Constitution the right to be free from unreasonable, unjustifiable and excessive force.

62. Unknown Defendant Officers deprived Ms. Brown of this Fourth Amendment right by pulling her to the ground by her wrists/arms, applying painful pressure to the back of her ear, forcing a knee in her back while holding her down to the ground, and applying double handcuffs to her wrist so tightly that her wrists were lacerated and bled.

63. The actions of Unknown Defendant Officers were willful, intentional and malicious and/or done with reckless indifference to and callous disregard for Plaintiffs' rights.

64. As a result of the Defendant Officers' conduct, Ms. Brown suffered physical and emotional

injuries.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Officers jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT III: 1983- FAILURE TO INTERVENE
(Against All Unknown Individual Defendant Officers)

65. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

66. All Unknown Defendants had a reasonable opportunity to prevent one another's excessive force against Ms. Brown and unlawful seizure of Ms. Brown, but failed to do so.

67. As a result of the Unknown Defendant Officers' failure to intervene, Ms. Brown suffered physical and emotional injuries as well as loss of liberty.

68. Unknown Defendant Officers' misconduct was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Ms. Brown's rights.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Officers, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT IV: BATTERY (state law claim)
(Against All Unknown Individual Defendant Officers)

69. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

70. As set forth above, Unknown Individual Defendant Officers intentionally made physical contact with Ms. Brown without just cause. The physical contact was offensive and harmful.

71. The actions of the Defendant Officers were intentional, willful, and wanton.

72. The misconduct set forth herein was undertaken with intentional disregard for Ms. Brown's rights.

73. As a direct and proximate result of Defendant Officers' misconduct, Ms. Brown sustained damages including physical and emotional pain and suffering..

**WHEREFORE,** the Plaintiff prays for judgment against all Unknown Individual Defendant Officers, jointly and severally, for an award of reasonable compensatory and punitive damages, plus costs.

## JURY DEMAND

Plaintiff requests trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to the undersigned counsel.

BY:   /s/ Abby D. Bakos
       Abby D. Bakos

Bakos & Maisuria Law Group, LLC
1755 Park Street, Suite 200-1070
Naperville, Illinois 60563
833-800-2654
abby@bakosmaisuria.com
www.bakosmaisuria.com

## CERTIFICATE OF SERVICE

    The undersigned, an attorney, hereby certifies that she served the foregoing Complaint upon all Parties of record via CM/ECF Electronic Filing on February 23, 2023.

    Respectfully,

BY:   /s/ Abby D. Bakos
       Abby D. Bakos

Bakos & Maisuria Law Group, LLC
1755 Park Street, Suite 200-1070
Naperville, Illinois 60563
833-800-2654
abby@bakosmaisuria.com
www.bakosmaisuria.com